Don DURNS

v.

BUREAU OF PRISONS, et al., Appellants.

Eugene John IZZI

v.

UNITED STATES PAROLE COMMISSION, Appellant.

Robert A. MINEO

v.

UNITED STATES DEPARTMENT OF JUSTICE, et al., Appellants.

Eddie David COX

v.

UNITED STATES DEPARTMENT OF JUSTICE, et al., Appellants.

Nos. 85–5704, 85–5714, 85–5778 and 85–5999.

United States Court of Appeals, District of Columbia Circuit.

Argued April 22, 1986.

Decided Sept. 12, 1986.

Dissenting Opinion Oct. 10, 1986.

As Amended Oct. 10, Oct. 15 and Nov. 3, 1986.

Rehearing En Banc Denied Dec. 23, 1986.

Sandra Wien Simon, Atty., Dept. of Justice, with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellants in Nos. 85–5704, 85–5714, 85–5778 and 85–5999. Royce C. Lamberth, R. Craig Lawrence and Patricia D. Carter, Asst. U.S. Attys., Washington, D.C., entered appearances for appellants in No. 85–5704. Robert E.L. Eaton, Jr., Asst. U.S. Atty., Washington, D.C., entered an appearance for appellants in No. 85–5999.

Eric Glitzenstein, with whom Katherine A. Meyer and Alan B. Morrison, Washington, D.C., were on the brief, for appellees in Nos. 85–5714 and 85–5999.

Don Durns, pro se.

Robert A. Mineo, pro se.

Before SCALIA * and SILBERMAN, Circuit Judges, and WRIGHT, Senior Circuit Judge.

* Circuit Judge SCALIA was a member of this court at the time the opinion for the court was filed and had concurred in it. He became an Associate Justice of the Supreme Court of the United States on September 26, 1986.

Opinion filed by Circuit Judge SILBERMAN.

Dissenting opinion filed by Senior Circuit Judge J. SKELLY WRIGHT.

SILBERMAN, Circuit Judge:

These four consolidated cases raise the question of whether presentence reports prepared in connection with the sentencing of federal offenders are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552 (1982) (FOIA). The appellants, the Department of Justice, the Bureau of Prisons, and the United States Parole Commission, challenge district court orders compelling disclosure to federal prisoners of reports prepared for their sentencing. In each case below, the district court rejected the Government's various contentions as to why presentence reports are exempt from disclosure under FOIA. The Government maintains, *inter alia*,[1] that presentence reports are intragovernmental memoranda "which would not be available by law to a party ... in litigation with the agency" as stated in FOIA Exemption 5, 5 U.S.C. § 552(b)(5) (1982). Because we agree that presentence reports fall within the purview of Exemption 5, we reverse the judgments under appeal.

## I.

Presentence investigation reports are prepared by the probation service of each federal district court to aid the court in sentencing defendants. The reports contain information on the circumstances surrounding the defendant's crime and on the defendant's background; they include the probation officer's sentencing and parole recommendations. *See generally* Fennell and Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal*

*Courts*, 93 HARV.L.REV. 1613, 1621–1630 (1980). The sentencing courts' use of the reports is governed by Fed.R.Crim.P. 32(c). The reports are also used by the United States Parole Commission in connection with prisoners' parole determinations. *See* 18 U.S.C. § 4207(3) (1982). In addition, the Bureau of Prisons has used presentence reports with respect to decisions relating to the terms and conditions of prisoners' incarceration.

In its original form, Rule 32(c) reflected a strong policy against disclosure of presentence reports to anyone, including the defendant. It was thought that strict confidentiality was necessary to assure the continued availability of the sources consulted by the probation service in preparing the reports. *See, e.g., Williams v. New York*, 337 U.S. 241, 249–50, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949). More recently, however, Rule 32(c) has been revised to balance this interest in confidentiality with defendants' interest in ensuring the accuracy of reports used in their sentencing. A defendant and his attorney are now entitled, subject to certain limited exceptions, to read and comment on the presentence report before a court imposes sentence. *See* Fed.R.Crim.P. 32(c)(3)(A). Similarly, under the Parole Commission and Reorganization Act, *see* 18 U.S.C. § 4208(b)(2) (1982), the Parole Commission is required to afford prisoners "reasonable access" to presentence reports used in determining parole. Under current regulations, however, the Commission does not permit prisoners to keep a copy of their report unless the sentencing court agrees. *See* 28 C.F.R. § 2.56(b) (1985).

Each of the four appellees, Don Durns, Eugene John Izzi, Robert A. Mineo, and Eddie David Cox, is an inmate of a federal prison. Each requested a copy of his pre-

---

1. The Government also contends that presentence reports are "specifically exempted from disclosure by statute," FOIA Exemption 3, 5 U.S.C. § 552(b)(3) (1982), by virtue of limitations assertedly placed upon prisoners' access to the reports by the Parole Commission and Reorganization Act, *see* 18 U.S.C. § 4208(b) (1982), when read in conjunction with Fed.R.Crim.P. 32(c). In the alternative, the Government argues that those provisions constitute an independent statutory disclosure scheme which completely supplants FOIA in this context. Because we agree with the Government's position that presentence reports are covered by Exemption 5, we do not pass upon these less substantial arguments.

sentence report[2] from officials of the Parole Commission or the Bureau of Prisons; each request was denied because the sentencing courts objected to release of the reports.[3] The appellees then brought suit under FOIA. They relied on *Carson v. Dep't of Justice*, 631 F.2d 1008 (D.C.Cir. 1980), and *Lykins v. Dep't of Justice*, 725 F.2d 1455 (D.C.Cir.1984), in which this Circuit had held that presentence reports are "agency records" subject to FOIA when in the possession of the Parole Commission.[4] The Government maintained, however, that presentence reports are shielded from disclosure by particular FOIA exemptions. Each court below rejected the government's arguments and ordered disclosure. *See Durns v. Bureau of Prisons*, 605 F.Supp. 1213 (D.D.C.1985); *Izzi v. United States Parole Comm'n*, No. 84–3030 (D.D.C. April 22, 1985); *Mineo v. United States Dep't of Justice*, No. 84–3899 (D.D.C. April 29, 1985); *Cox v. United States Dep't of Justice*, No. 85–0892 (D.D.C. July 31, 1985). The Government now appeals.

## II.

FOIA is designed to "guarantee[ ] the right of persons to know about the business of their government." H.R.Rep. No. 876, 93d Cong., 2d Sess. 4 (1974), U.S.Code Cong. & Admin.News, 1974, pp. 6267, 6269. In general, FOIA creates a broad public right of access to federal agency records. But Congress recognized that "public disclosure is not always in the public interest," *Baldrige v. Shapiro*, 455 U.S. 345,

352, 102 S.Ct. 1103, 1108, 71 L.Ed.2d 199 (1982), and so created nine specific exemptions from disclosure. *See* 5 U.S.C. § 552(b) (1982). Exemption 5, with which we deal here, embraces "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* § 552(b)(5). This exemption ensures that members of the public cannot obtain through FOIA what they could not ordinarily obtain through discovery undertaken in a lawsuit against the agency. *See EPA v. Mink*, 410 U.S. 73, 85–86, 93 S.Ct. 827, 835–36, 35 L.Ed.2d 119 (1973).

We are guided, in considering the applicability of Exemption 5 to presentence reports, by several recent Supreme Court decisions that serve to clarify the scope of the exemption. In *FTC v. Grolier Inc.*, 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983), the Court upheld an agency's rejection of a FOIA request seeking memoranda prepared by agency counsel in previous litigation with the requesting party. The Court stated that "[t]he test under Exemption 5 is the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *Id.* at 26, 103 S.Ct. at 2213 (citation omitted). Since under prevailing doctrine attorney work-product in preparation for litigation is privileged from civil discovery, even in subsequent litigation, the memoranda in question would not be generally available to private parties in litigation with the agency. *See id.* at 26–27,

---

**2.** Cox also asked for a postsentence report, which is prepared in cases in which there has been no presentence investigation. *See* Brief for Appellants, No. 85–5999, at 5–6. Presentence and postsentence reports are essentially the same, and we treat them together for purposes of their status under FOIA.

**3.** Izzi originally sought three separate presentence reports. The District Court for the Northern District of Indiana agreed to give him two presentence reports prepared for his sentencing there, but the District Court for the District of Puerto Rico refused to release the report prepared by its probation service.

**4.** Although acknowledging that we do not "formally" overrule *Carson* and *Lykins*, the dissent

claims that we have "effectively nullified" those two cases and asserts that "it is clear that the *Carson* court felt that FOIA required disclosure of presentence reports under some circumstances." Dissent at p. 709. But both *Carson* and *Lykins* held only that presentence reports are "agency records." *Carson*, 631 F.2d at 1009; *Lykins*, 725 F.2d at 1458–60 (reaffirming *Carson*). Nothing implicit in that determination makes "it clear" that FOIA mandates at least some disclosure. As the *Carson* court explicitly stated: "We do not decide, nor even suggest, that the FOIA mandates disclosure of all or some part of the presentence report." *Carson*, 631 F.2d at 1009.

103 S.Ct. at 2213–14. The Court concluded that Exemption 5 applies even where the underlying privilege is qualified and may be defeated by a party's showing of particularized need. *Id.* at 27, 103 S.Ct. at 2214. That a party would be able to obtain discovery in particular circumstances, the Court emphasized, does not show that the materials in question were "routinely" available. Thus, even if certain privileged materials had already been disclosed—if the privilege had been defeated or waived—they were still shielded by Exemption 5 from FOIA disclosure. *See id.* at 28, 103 S.Ct. at 2214; *see also NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 n. 16, 95 S.Ct. 1504, 1515 n. 16, 44 L.Ed.2d 29 (1975).

In *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), the Supreme Court held that Exemption 5 embraced confidential statements made to air crash safety investigators. The Court noted that the lower courts had held that such communications were privileged from civil discovery. *See, e.g., Machin v. Zukert,* 316 F.2d 336 (D.C. Cir.), *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963). While expressing some doubt that Exemption 5 would encompass "novel" privileges, the Court concluded that it certainly covered "well-settled" privileges like the one at issue in the case. *See* 465 U.S. at 801, 104 S.Ct. at 1494. According to the Court, a privilege need not be specifically mentioned in FOIA's legislative history to fall within Exemption 5; rather, "the history of Exemption 5 can be understood by means of 'rough analogies' " to privileges recognized by Congress. *Id.* at 802, 104 S.Ct. at 1494 (citation omitted).

In light of these precedents, we conclude that presentence reports are "inter-agency or intra-agency memorandums ... which would not be available by law to a party

... in litigation with the agency."[5] Just as a judicially-fashioned privilege shielded the witness statements made to air crash safety investigators involved in *Weber Aircraft,* relevant case law establishes that presentence reports are not routinely available in discovery. An impressive body of doctrine recognizes the privileged nature of presentence reports. *See, e.g., United States v. Anderson,* 724 F.2d 596 (7th Cir. 1984); *United States v. Charmer Indus.,* 711 F.2d 1164 (2d Cir.1983); *United States v. Martinello,* 556 F.2d 1215 (5th Cir.1977); *United States v. Cyphers,* 553 F.2d 1064 (7th Cir.), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977); *United States v. Figurski,* 545 F.2d 389 (4th Cir. 1976); *United States v. Greathouse,* 484 F.2d 805 (7th Cir.1973); *United States v. Evans,* 454 F.2d 813 (8th Cir.), *cert. denied,* 406 U.S. 969, 92 S.Ct. 2423, 32 L.Ed.2d 668 (1972); *United States v. Mayse,* 467 F.Supp. 1339 (E.D.Tenn.1979); *United States v. Krause,* 78 F.R.D. 203 (E.D.Wis. 1978); *Hancock Bros., Inc. v. Jones,* 293 F.Supp. 1229 (N.D.Cal.1968); *cf. United States v. McKnight,* 771 F.2d 388, 390 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986); *United States v. Dingle,* 546 F.2d 1378, 1380–81 (10th Cir.1976). To be sure, the typical scenario in these cases is a criminal defendant's attempt to obtain access to his co-defendant's presentence report. *See, e.g., Anderson, supra; Martinello, supra; Greathouse, supra.* But the privilege has been recognized in other contexts as well: where a state attorney general attempted to obtain the presentence report of a corporate liquor licensee, *Charmer, supra;* where a judgment creditor attempted to obtain access to its debtor's presentence report, *Krause, supra;* where a psychiatrist sought to obtain the report of a pa-

---

5. Appellees contended for the first time at oral argument that presentence reports are not "inter-agency or intra-agency memorandums" because they are prepared by employees of the courts, which are not "agencies" under FOIA. This Circuit, however, has employed a functional rather than a literal test in assessing whether memoranda are "inter-agency or intra-agency."

*See Ryan v. Dep't of Justice,* 617 F.2d 781, 790 (D.C. Cir.1980). If a report is not subject to disclosure in the hands of the courts, and is exempt from disclosure if distributed to the Parole Commission by another "agency," then it would make little sense indeed to hold that that report is subject to disclosure when distributed from the courts to the Commission.

tient. *Mayse, supra.* These various decisions demonstrate that presentence reports are not available "upon a showing of relevance," *Grolier,* 462 U.S. at 26, 103 S.Ct. at 2213, but rather only when "required to meet [the] ends of justice." *Hancock Bros.,* 293 F.Supp. at 1233.

The privilege against disclosure of presentence reports, moreover, is "roughly analogous" to those privileges Congress meant to codify in Exemption 5. As *Weber Aircraft* noted, Congress recognized the need for privileges in situations in which "confidentiality is necessary to ensure frank and open discussion and hence efficient governmental operations." 465 U.S. at 802, 104 S.Ct. at 1494. In *Weber Aircraft,* for instance, statements made to air crash investigators were deemed privileged because "the Government would not be able to obtain the information but for its assurance of confidentiality." 465 U.S. at 803 n. 23, 104 S.Ct. at 1495 n. 23.[6] Presentence reports are privileged for much the same reason. The privileged nature of presentence reports reflects "the prevailing judicial view that the public availability of presentence reports would likely inhibit the flow of information to the sentencing judge." *Charmer,* 711 F.2d at 1173; *see Martinello,* 566 F.2d at 1216.

Appellees argue that Exemption 5 ought not to apply here because there is no established discovery privilege governing the particular circumstances of this case. First, they point out that the cases recognizing the privileged nature of presentence reports do not involve situations in which parties are "in litigation with the agency." *See* 5 U.S.C. § 552(b)(5) (1982). This is, in our view, a distinction without a difference. That cases have not arisen involving the Parole Commission or the Bureau of Pris-

ons indicates only that no one has sought to obtain the reports from them (rather than from a court); it does not demonstrate that the reports are not privileged when in their hands. The appellees have offered no reason why the abundant case law establishing the privileged nature of the reports would not be applied *a fortiori* if such a lawsuit transpired. The logic of those cases and the "prevailing judicial view" which they reflect, *Charmer,* 711 F.2d at 1173, clearly indicate that the reports would not be routinely available to a party in litigation with the agency.

The appellees also contend that the privilege surrounding presentence reports only applies against third parties seeking access to the report and not against the subject of the report himself. Again, however, the absence of cases involving plaintiffs who are themselves the subject of the reports proves only that such persons have not sought copies of the reports during litigation with the agency (probably because they are already permitted to read the reports before decisions are reached respecting their sentencing and parole). The distinction the appellees draw between the subject of a report and third parties might have substance if the basis for the privilege were the protection of the subject's privacy. As we have seen, however, the reports are protected primarily to maintain the Government's ability to gather information from confidential sources, *see supra* p. 703, a rationale which applies irrespective of the identity of the party seeking disclosure of the report.[7]

In any event, we need not dwell on whether a presentence report would be privileged from discovery in civil litigation by the subject of the report. Even if the

---

**6.** The Court also noted that refusal to recognize a privilege would not necessarily advance FOIA's pro-disclosure policy in any event, because "much if not all of the information covered by the ... privilege would not find its way into the public realm ... since under those circumstances the information would not be obtained by the Government in the first place." 465 U.S. at 803 n. 23, 104 S.Ct. at 1495 n. 23.

**7.** Under the dissent's logic if any *individual* shows that he or she could probably discover an agency record in civil litigation, that individual can gain the same record in a FOIA proceeding. That position seems squarely at odds with *Grolier* because it would require the district court *in a FOIA proceeding* to conduct mini-trials to determine the precise contours of exceptions to civil discovery rules.

reports could be obtained in this way, Exemption 5 still blocks their disclosure under FOIA. This is so because Exemption 5 prevents disclosure of memoranda that would not be *routinely* available in civil discovery. *See Weber Aircraft*, 465 U.S. at 799, 104 S.Ct. at 1492; *Grolier*, 462 U.S. at 26, 103 S.Ct. at 2213. That a particular individual with a special interest in or need for certain documents could obtain discovery of them does not mean that they are normally available to private parties on a showing of relevance. *See Weber Aircraft*, 465 U.S. at 802 n. 20, 104 S.Ct. at 1894 n. 20; *Grolier*, 462 U.S. at 27–28, 103 S.Ct. at 2214–15; *Sears, Roebuck*, 421 U.S. at 149 n. 16, 95 S.Ct. at 1515 n. 16. Whether an individual's particularized need for documents is recognized by judicial doctrine, or, for that matter, by a statute such as the Parole Commission and Reorganization Act that grants him "reasonable access" to those documents (something similar to but less extensive than FOIA disclosure), the documents are still "normally privileged in the civil discovery context." *Sears, Roebuck*, 421 U.S. at 149, 95 S.Ct. at 1515 (footnote omitted). Nor can it be maintained that Exemption 5 has a particularly limited application to the present requester since he is (arguably) precisely one of those who would be able to demonstrate a special interest or need justifying access to the documents in litigation. FOIA rights are not calibrated in this fashion. Under FOIA, "any member of the public [has] as much right to disclosure as one with a special interest therein," *id.* at 149, 95 S.Ct. at 1515 (citations omitted); Congress granted the scholar and the scoun-drel equal rights of access to agency records. It follows that the appellees must press their claim of particularized need in another forum, for "it is not a claim under the FOIA." *Weber Aircraft*, 465 U.S. at 802 n. 20, 104 S.Ct. at 1494 n. 20.[8]

The judgments of the district courts are therefore *reversed.*

J. SKELLY WRIGHT, Senior Circuit Judge, dissenting:

Under a vastly expanded Exemption 5 rubric, the majority in this case overturns the decisions of four District Court judges in this circuit and creates a *per se* rule against disclosure of presentence reports under the Freedom of Information Act (FOIA). *See Durns v. Bureau of Prisons*, 605 F.Supp. 1213 (D.D.C.1985); *Izzi v. U.S. Parole Comm'n*, No. 84–3030 (D.D.C. April 22, 1985); *Mineo v. U.S. Dep't of Justice*, No. 84–3899 (D.D.C. April 29, 1985); *Cox v. U.S. Dep't of Justice*, No. 85–0892 (D.D.C. July 31, 1985); *see also White v. U.S. Dep't of Justice*, 606 F.Supp. 880 (D.D.C.1985). That rule not only mischaracterizes Exemption 5, but effectively nullifies two earlier decisions of this court. *See Carson v. U.S. Dep't of Justice*, 631 F.2d 1008 (D.C.Cir. 1980); *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455 (D.C.Cir.1984). Despite the majority's holding, it is clear that prisoners' own presentence reports are "routinely" and "normally" available to them in civil litigation, and thus do not fall under Exemption 5. As a consequence, I respectfully dissent.

FOIA's Exemption 5, 5 U.S.C. § 552(b)(5) (1982), protects from disclosure "inter-

---

**8.** We reject the appellees' argument that Exemption 5 does not apply here because they have already seen their presentence reports, so any underlying discovery privilege has assertedly been "waived." Whether or not appellees' theory of waiver would be accepted in the civil discovery context, it does not establish that presentence reports are routinely available there and so does not satisfy Exemption 5's test. *See Grolier*, 462 U.S. at 27–28, 103 S.Ct. at 2214–15.

We are also unpersuaded by the appellees' suggestion that we should not read Exemption 5 to cover presentence reports because that would "substantially duplicate another exemption,"

*Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 355, 99 S.Ct. 2800, 2809, 61 L.Ed.2d 587 (1979). The appellees point to Exemption 6, which covers certain "unwarranted invasion[s] of personal privacy." 5 U.S.C. § 552(b)(6). Concerns about the subjects' privacy, however, are not the dominant purpose for the privilege covering presentence reports. *See supra* p. 703. In any event, the Court's brief statement in *Merrill* was offered only as an expression of "hesitat[ion]," 443 U.S. at 355, 99 S.Ct. at 2809, and was labeled as "dictum" in *Weber Aircraft*. *See* 465 U.S. at 801 n. 18, 104 S.Ct. at 1494 n. 18.

agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The Supreme Court has interpreted this language to cover only documents "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975); *see also Grolier v. FTC*, 462 U.S. 19, 26, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983) (Exemption 5 applies to documents "normally" and "routinely" privileged). The question before this court, then, is whether presentence reports would "normally" be privileged from disclosure to the appellees in civil discovery. If presentence reports are privileged in civil discovery, they fall under FOIA Exemption 5's protection as well.

The majority finds that a "qualified privilege" exists for presentence reports in civil discovery by citing a plethora of cases that have barred *third parties* from receiving copies of presentence reports from the sentencing court itself.[1] *See* majority opinion (maj. op.) at 702–03. Without any case support, the majority argues that the privilege protects presentence reports from discovery requests by the *subjects* of those reports as well. Maj. op. at 705. The source of this "privilege" is somewhat unclear, but seems to lie in the powers given sentencing courts by Rule 32(c) of the Federal Rules of Criminal Procedure and to the Parole Commission by the Parole Commission and Reorganization Act, 18 U.S.C. § 4208(b)(2) (1982). *See, e.g., United States v. Anderson*, 724 F.2d 596, 598–99 (7th Cir.1984); *United States v. Charmer Industries, Inc.*, 711 F.2d 1164, 1171 (2d

Cir.1983); *White v. U.S. Dep't of Justice*, 606 F.Supp. 880, 886 (D.D.C.1985). The scope of the privilege for presentence reports in civil discovery turns, therefore, on the language of these two provisions.

Even brief examination reveals that Rule 32(c) and the Parole Commission and Reorganization Act do not create a civil discovery privilege against disclosure of a presentence report to its subject. On the contrary, Rule 32(c) specifically makes presentence reports available to prisoners before sentencing, with only limited exceptions, Fed.R.Crim.P. 32(c)(3)(A), and the Parole Commission and Reorganization Act actually *requires* the Parole Commission to give prisoners "reasonable access" to presentence reports used in parole deliberations.[2] 18 U.S.C. § 4208(b)(2) (1982). In light of these provisions, it is clear that the fact that existing presentence report access cases involve requests only from third parties is not mere fortuity, despite the majority's suggestion. Maj. op. at 705. No cases have arisen establishing any "qualified privilege" for presentence reports against disclosure requests from the subjects of those reports precisely because the only possible source for such a privilege, far from limiting prisoner access to the documents, actually gives prisoners a statutory *entitlement* to access. The only restrictions on that entitlement are the narrow exceptions to disclosure set out by the two sections. *See* Fed.R.Crim.P. 32(c)(3)(A); 18 U.S.C. § 4208(b)(2). It seems clear, then, that prisoners in civil litigation with the agencies are not barred

---

1. The majority assumes that the power of the sentencing court to deny third-party access to the reports in the criminal context translates into a privilege against disclosure in the civil discovery context as well. Maj. op. at 705. Although the court has not definitively demonstrated that such a leap is warranted, the present case does not require resolution of the issue. Even if we assume that a *third-party* privilege exists, it does not apply to the subjects of the reports, as discussed below. Exemption 5 therefore does not apply here.

2. Granted, the Parole Commission has promulgated regulations under the Act barring prison-

ers from keeping a copy of their report unless the sentencing court agrees. 28 C.F.R. § 2.56(b) (1985). But a restriction on the form of prisoner access is not, in itself, sufficient to create a presumption of privileged status. The majority cites no cases that indicate otherwise. As the Parole Commission and Reorganization Act in every other pertinent aspect indicates that no privilege extends to requests for presentence reports by subjects, I see no justification for finding such a privilege on the basis of this regulation. *See* 18 U.S.C. § 4208(b)(2) (1982).

from discovering their own presentence reports.[3]

The majority sidesteps this obvious conclusion by finding that even if presentence reports would be available to these *particular* appellees in civil discovery, presentence reports in general are not "routinely" or "normally" available, and therefore fall within the scope of FOIA Exemption 5. Maj. op. at 705; *Grolier v. FTC*, 462 U.S. 19, 26, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983). But to say the reports are not "routinely" available because some *other* party would have to show a "particularized need" to gain access to them in civil discovery is effectively to argue that the reports must be "routinely" available to anyone at any time in order to avoid Exemption 5 status. This significantly exaggerates the scope of the Supreme Court's "routinely available" standard.

In *Grolier* the Court found Exemption 5 applied to materials prepared in the course of a Federal Trade Commission investigation. Those materials were protected by the attorney work-product privilege in *every* case, absent a party's special showing of "substantial need" for the documents. 462 U.S. at 25, 103 S.Ct. at 2213. The blanket privilege against disclosure in the case was "qualified" by a special showing of need. The availability of such a qualification did not, by itself, make the documents "routinely" available, and Exemption 5 applied. In *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), the Court was similarly cautious: Exemption 5 covered statements made by air safety experts to Air Force officials, because those statements were normally privileged from discovery by *anyone* under the well-established rule of *Machin v. Zuckert*, 316 F.2d 336 (D.C.Cir.1963). Once again, only a special showing of need by a party could overcome the prohibition on disclosure to *any* party, and once again, the availability of

that special showing did not make disclosure "routine." Exemption 5 applied.

Neither of these cases remotely resembles the present situation. Here, no blanket privilege against disclosure exists. Instead, Rule 32(c) and the Parole Commission and Reorganization Act at most support a privilege against disclosure of the reports to third parties. No privilege runs against requests by prisoners for their own reports. The prisoner need not show any "particularized need" to overcome some hypothetical privilege protecting his own report; the prisoner need only show that he is the subject of the report requested to avoid any privilege whatever. In fact, the *agency* effectively must show a "particularized need" in order to *withhold* the report from the subject. Fed.R.Crim.P. 32(c)(3)(A); 18 U.S.C. § 4208(b)(2). The prisoner's *right* to the document does not "qualify" some overall privilege. It limits the scope of the privilege to requests by third parties. The reports in dispute here would be "routinely available" to their subjects in civil discovery, and therefore they are not covered by Exemption 5.

The majority points out that "Congress granted the scholar and the scoundrel equal rights of access to agency records" under FOIA. Maj. op. at 706. By making the success of the FOIA request for these documents ride on the identity of the requestor, my approach might seem at first blush to belittle this principle. But while it is certainly true that FOIA generally gives members of the public equal access to agency records, *see Sears, Roebuck*, 421 U.S. at 149, 95 S.Ct. at 1515, it is also true that Congress specifically made the government's ability to withhold documents under Exemption 5 turn on civil discovery questions that *vary* depending on the status of classes of document requestors. *See Grolier*, 462 U.S. at 26, 103 S.Ct. at 2213. Here, no privilege bars access of members of this class to their own reports. The Supreme Court's limitation of

---

**3.** Presumably the court presiding in such a case would grant the government the power to redact names of confidential informants, etc.,

along the lines set out by Rule 32(c) and the Parole Commission and Reorganization Act. 18 U.S.C. § 4208(b)(2).

Exemption 5's incorporation of discovery rules to "routinely" available documents helps avoid full-blown mini-trials on civil discovery matters in FOIA cases. *See id.; Weber Aircraft,* 465 U.S. at 799, 104 S.Ct. at 1492. It does not exempt all documents arguably protected by privilege from someone, somewhere.

The majority attempts to bolster its reasoning by asserting that the purpose behind the "qualified privilege" is merely to ensure government access to confidential information. As this purpose is not furthered by distinguishing between the right of access of the subject of the report and the right of third parties, the majority argues, the court should not create such a distinction. Maj. op. at 705. This argument suffers from several fundamental flaws. The source of the majority's privilege, after all, is Rule 32(c) and the Parole Commission and Reorganization Act, both of which embrace two *competing* policies. Each provision explicitly weighs the importance of ensuring government access to confidential information against the legitimate need of the prisoner to verify the accuracy of the report by which his punishment is determined, as the majority itself acknowledges. Maj. op. at 702. If government access were the only policy considered important by Congress in the two provisions, Congress would not have given the prisoners here the right to review their own presentence reports. Congress did not just "qualify" the privilege for the subject of the report; Congress *eliminated* that privilege by giving the subject a right to the document.

Moreover, the policy of ensuring government access to information does not require *per se* Exemption 5 treatment of presentence reports. On the contrary, Congress specifically tailored other FOIA exemptions to ensure that informants will be guaranteed confidentiality in providing important information. Exemption 7 protects the identity of confidential sources and confidential information, and exempts from release records that would "constitute an unwarranted invasion of privacy." 5 U.S.C. § 552(b)(7). As the appellants have specific authority under FOIA to delete those portions of a document that are exempt, 5 U.S.C. § 552(b), it seems to me that they can avoid any chilling effect disclosure might have by judicious trimming of confidential information and the names of confidential sources from the presentence reports. Exemption 7, in fact, approximates the access limitations available to the sentencing court under Rule 32(c). It makes little sense to deprive federal prisoners of access to information they could have seen, or in fact did see, at the time of their sentencing. Given the availability of an effective redaction procedure, appellants have failed to show any prejudice or need for *per se* exemption of presentence reports. Certainly the denial of this status for presentence reports has not been shown to harm legitimate government interests.

For all these reasons, I must dissent from the majority's determination that Exemption 5 covers presentence reports in general. But in addition to these arguments directly on the merits, it is important to note the effect of the majority's opinion on prior precedent in this circuit. Although the majority's opinion does not *formally* overturn any decisions of this court, the effect of the opinion is to make two cases dead letter. In *Carson v. U.S. Dep't of Justice,* 631 F.2d 1008 (D.C.Cir.1980), this court found that presentence reports are "agency records" for FOIA purposes. *Id.* at 1009. Although that opinion explicitly left open the possibility that specific FOIA exemptions might limit the availability of the reports, *id.,* it is clear that the *Carson* court felt that FOIA required disclosure of presentence reports under some circumstances. *Id.* at 1015. In *Lykins v. U.S. Dep't of Justice,* 725 F.2d 1455, 1458–59 (D.C.Cir.1984), the court cited *Carson* with approval and specifically reaffirmed that FOIA reaches presentence reports.

By finding that presentence reports fall within Exemption 5 even when requested by the subject of the report, the majority has effectively annulled both *Carson* and *Lykins.* The fact that presentence reports

are "agency records" subject to FOIA is utterly without significance if Exemption 5 automatically and universally protects those reports. Perhaps the majority opinion does not, strictly speaking, overturn the narrowly constructed holding of *Carson* and *Lykins*. Nevertheless, the majority's willingness to eviscerate circuit precedent without discussion strengthens my conviction that the court has seriously misconstrued the law in this case.

Because presentence reports are normally and routinely available to the subjects of those reports under Fed.R.Crim.P. 32(c) and the Parole Commission and Reorganization Act, and thus normally and routinely available to the subjects in the civil discovery context, they are not protected from disclosure to these appellees by Exemption 5 of FOIA. Therefore, I would order the appellants in each of these cases to deliver copies of the presentence reports to appellees. As the majority has not so directed the appellants,

I respectfully dissent.